1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEVANTE P.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C20-50-MLP

ORDER

## I.   INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by finding the Residual Function Capacity ("RFC") was supported by substantial evidence, rejecting lay witness testimony, finding Plaintiff has past relevant work that he can perform, and in her step five determination. (Dkt. # 10 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.   BACKGROUND

Plaintiff was born in 1993, has a high school education, and has worked as a warehouse worker, dishwasher, driver's helper, and in custodial work. AR at 75, 241, 424. On December 27, 2016, Plaintiff applied for benefits, alleging disability as of March 10, 1999. *Id.* at 41.

Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 151-53. After the ALJ conducted a hearing on September 18, 2018, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 41-58.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since December 27, 2016, the application date.

Step two: Plaintiff has the following severe impairments: depressive disorder, post-traumatic stress disorder, personality disorder, and thoracic scoliosis (20 C.F.R. § 416.920(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform light work as defined in 20 C.F.R. § 416.967(b). Plaintiff can frequently perform overhead reaching with the left upper extremity; can maintain sufficient concentration to perform simple, routine tasks in two hour increments throughout the workday; can work in the same room with his coworkers, but there should be no coordination of work activity; can interact superficially with coworkers; can work superficially and occasionally with the general public (for purposes of working with the public, superficially means that working with the public should not be the focus of the job); can interact occasionally with supervisors; and can adapt to very simple workplace changes.

Step four: Plaintiff can perform past relevant work as a cleaner/housekeeper. This work does not require the performance of work-related activities precluded by the RFC.

Step five: In the alternative, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and therefore Plaintiff is not disabled.

AR at 41-58.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-7. Plaintiff appealed the final decision of the Commissioner to this Court.

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

### IV.    DISCUSSION

#### A.    The ALJ Did Not Err in the RFC Determination

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the case record, such as: medical history; the effects of treatment, including limitations or restrictions imposed by

1    the mechanics of treatment (*e.g.*, side effects of medication); reports of daily activities; lay

2    activities; recorded observations; medical source statements; effects of symptoms, including

3    pain, that are reasonably attributed to a medically determinable impairment; evidence from work

4    attempts; need for structured living environment; and work evaluations. *Id.*

5        As noted above, the ALJ found Plaintiff can perform light work as defined in 20 C.F.R. §

6    416.967(b) with further restrictions contained in the RFC. Plaintiff argues the ALJ omitted

7    medical information that indicates his limitations are greater than those reflected in the RFC.

8    (Dkt. ## 10 at 8, 14 at 5.) Specifically, Plaintiff argues the ALJ erred in both failing to account

9    for several alleged medical conditions and in discounting two medical opinions. The Court will

10   address each argument in turn.

11           *1.    Conditions*

12       Plaintiff asserts the ALJ did not account for his bipolar disorder diagnosis[3] and that

13   although the ALJ acknowledges his scoliosis, the ALJ failed to ascribe limitations regarding this

14   condition. (Dkt. # 10 at 9 (citing AR at 46).) Plaintiff further alleges the RFC has no significant

15   limitations regarding his major depressive disorder. (*Id.*)

16       Although Plaintiff asserts these medical issues were not accounted for in the RFC, he has

17   not identified what further limitations would be required as a result of these conditions. The ALJ

18   found specific restrictions to account for Plaintiff's impairments, including a restriction to

19   overhead reaching with just the left upper extremity, simple, routine tasks in limited increments,

20   superficial interaction with co-workers and the general public, and occasional interaction with

21   supervisors. The ALJ applied the proper legal standard and her determination is supported by

22   substantial evidence, as discussed below. Thus, Plaintiff has failed to show the ALJ harmfully

23

---

[3] The Court notes the ALJ did not include bipolar disorder as a severe impairment at step two and
Plaintiff does not allege any err in the ALJ's step two determination.

1    erred. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556

2    U.S. 396, 407-09 (2009)) (holding the party challenging an administrative decision bears the

3    burden of proving harmful error).

4              2.      *Medical Opinions*

5              The opinions of examining physicians are to be given more weight than non-examining

6    physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject the

7    controverted opinions of an examining physician only by providing specific and legitimate

8    reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

9              a.      *David Widlan, Ph.D.*

10             Dr. Widlan performed a psychological evaluation of Plaintiff in June 2017. AR at 424-30.

11   He opined that Plaintiff suffers from major depressive disorder, post-traumatic stress disorder,

12   and antisocial personality disorder. *Id.* at 429. Dr. Widlan opined that Plaintiff has deficits in

13   memory, concentration, and social reasoning but would be able to accept simple instructions

14   from a supervisor. *Id.* He also opined Plaintiff would have trouble remembering more complex

15   tasks and would struggle with persistence and pace. *Id.* Dr. Widlan further opined Plaintiff would

16   struggle in negotiating simple social stressors and has deficits in activities of daily living. *Id.*

17             The ALJ assigned Dr. Widlan's opinion some weight.[4] AR at 54. Specifically, the ALJ

18   discounted the portion of his opinion that found Plaintiff would struggle with simple social

19   stressors, persistence, and pace. *Id.* The ALJ found these opined limitations are inconsistent with

20   records showing Plaintiff was largely alert, oriented, had normal mood and affect, and was

21   cooperative, although he did occasionally appear depressed and/or anxious. *Id.* (citing, *e.g.*, *id.* at

22

23   [4] Plaintiff asserts the ALJ gave Dr. Widlan's opinion only little weight rather than some weight. (Dkt. #
     14 at 6.) The Court notes that while the ALJ gave Dr. Widlan's Global Assessment of Functioning
     ("GAF") score little weight (AR at 51), the ALJ specifically gave Dr. Widlan's opinion some weight in
     her discussion of the medical opinion evidence. *See* AR at 53-54.

342 (organized thought process, no memory impairment, pleasant/cooperative, mild attention

impairment), 370 (thought process and content, orientation, perception, fund of knowledge,

concentration, and abstract thought within normal limits), 383 (appropriate mood and affect with

normal attention span and concentration), 398- 403 (alert and oriented; given lack of support of a

bipolar diagnosis, a trial of an SSRI as monotherapy recommended), 1236-240 (reported anxiety

but was found to be oriented with appropriate mood and affect, and normal insight and

judgment), 1297-98 (attentive and oriented with appropriate recall and fund of knowledge; recent

and remote memory appear intact), 1340 (appropriate mood and affect with normal insight and

judgment),1359 (appropriate affect with intact memory for recent and remote events), 1370

(normal affect and intact memory for recent and remote events), 1383 (reported feeling of

depression but had appropriate affect with intact memory), 1420 (normal orientation, memory,

judgment, attention span, and concentration).

The ALJ acknowledged Plaintiff's Wechsler Memory Scale ("WMS-IV") test scores

were between the 3rd and 10th percentile during Dr. Widlan's evaluation and that his delayed

recall was impaired, however, the ALJ found Plaintiff performed serial sevens and serial threes

subtraction without error and that his Trail Making test scores were in the non-impaired range.

AR at 54 (citing *id.* at 424-28).

Plaintiff takes issue with the ALJ's determination that Dr. Widlan's findings are

inconsistent with results from other mental status examinations, arguing Dr. Widlan performed a

more detailed assessment of Plaintiff than the other examinations. (Dkt. # 14 at 7.) However,

despite Plaintiff's assertion, the ALJ could reasonably consider the numerous other mental status

evidence in the record and find them inconsistent with the severity of Dr. Widlan's opinion.

Plaintiff also argues Dr. Widlan's opinion was endorsed by Dr. Christmas Covell, Ph.D.

However, the ALJ also gave Dr. Covell's opinion only some weight (AR at 53-54) for similar reasons, and Plaintiff did not challenge Dr. Covell's opinion. Plaintiff further asserts that while the ALJ found there was no acceptable medical source diagnosis of a medically determinable impairment regarding Plaintiff's alleged memory loss, Dr. Kenderdine noted memory deficiencies. Although one doctor noted memory issues, the ALJ could reasonably consider the numerous other medical records indicating Plaintiff's memory was normal and intact. Further, as discussed below, the ALJ properly discounted Dr. Kenderdine's opinion. Although Plaintiff proposes a different interpretation of the evidence, the ALJ's interpretation is rational and therefore must be upheld. *Thomas*, 278 F.3d at 954.

The ALJ also found Dr. Widlan's opinion was inconsistent with Plaintiff's activities of daily living. The ALJ noted Plaintiff acknowledged using public transportation, going to church, and shopping. AR at 54 (citing *id.* at 259-66; 283-90). Plaintiff argues his activities are limited and do not indicate an ability to engaged in work to the degree of an 8 hour 5 days a week work schedule. (Dkt. # 10 at 13.) However, "[a] conflict between a treating physician's opinion and a claimant's activity level is a … legitimate reason for rejecting the opinion." *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir 2001)). The ALJ could reasonably find the severity of Dr. Widlan's opinion was inconsistent with Plaintiff's activities of daily living.

The ALJ further found Plaintiff was able to interact at the hearing without apparent difficulty. AR at 54. An ALJ's reliance on personal observations of a claimant at the hearing "has been condemned as 'sit and squirm' jurisprudence." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). The practice has generally been met with disapproval and may not form the sole basis for discounting a claimant's symptom claims. *Orn v. Astrue*, 495

1    F.3d 625, 639 (9th Cir. 2007). Here, the ALJ's observations of Plaintiff did not form the sole

2    basis for her determination. Furthermore, even if this finding is error, the error would be

3    harmless because the ALJ provided additional specific and legitimate reasons, supported by

4    substantial evidence, for discounting Dr. Widlan's opinion. *See Carmickle.,* 533 F.3d at 1162-63.

5    Accordingly, the ALJ did not err in discounting portions of Dr. Widlan's opinion.

6                    *b.      Shawn Kenderdine, Ph.D.*

7          Dr. Kenderdine conducted a mental evaluation of Plaintiff in October 2016. AR at 366-

8    74. Dr. Kenderdine opined that Plaintiff has moderate limitations in understanding,

9    remembering, and persisting in tasks by followed detailed instructions, performing activities

10   within a schedule, maintaining regular attendance, being punctual within customary tolerances

11   without special supervision, learning new tasks, communicating and performing effectively in a

12   work setting, maintaining appropriate behavior in a work setting, and setting realistic goals and

13   planning independently. *Id.* at 368.

14         The ALJ assigned Dr. Kenderdine's opinion little or no weight. AR at 55. The ALJ found

15   his assessment contained internal inconsistencies. *Id.* at 54-55. Specifically, the ALJ found that

16   while Dr. Kenderdine opined Plaintiff was moderately limited in maintaining regular attendance

17   and performing within a schedule, he also opined that Plaintiff has either mild or no limitations

18   in his ability to complete a normal workday or workweek. *Id.* at 55 (citing *id.* at 368). The ALJ

19   also found the fact that Plaintiff drove and was a full-time caregiver for his mother requires

20   significant attention and concentration that is inconsistent with Dr. Kenderdine's opined

21   limitations regarding Plaintiff's off-task behavior. *Id.* (citing *id.* at 419). The ALJ further

22   discounted Dr. Kenderdine's opinion for the reasons outlined in her assessment of Dr. Widlan's

23   opinion. *Id.*

1      Plaintiff argues the inconsistencies identified by the ALJ reflect opinions regarding

2 different work activity, specifically being interrupted at work due to mental conditions and being

3 able to perform within a schedule or to maintain attendance. (Dkt. # 10 at 11.) As with the

4 arguments presented against the ALJ's assessment of Dr. Widlan's opinion, Plaintiff merely

5 proposes a different interpretation of the evidence. The ALJ could reasonably find that Dr.

6 Kenderdine's opinion that Plaintiff would only have mild or no limitations in completing a

7 workday was inconsistent with the opinion that Plaintiff was moderately limited in his ability to

8 perform within a schedule. The ALJ's conclusion must be upheld. *Thomas*, 278 F.3d at 954.

9      As discussed above, inconsistencies between a medical opinion and Plaintiff's activities

10 of daily living is a specific and legitimate reason to discount a medical opinion. In June 2017,

11 Plaintiff reported he was a full-time caregiver for his mother, drove, watched TV, did computer

12 activities on his cellphone, enjoyed writing music, took care of his mother's dog, and was able to

13 handle personal hygiene. AR at 419. Plaintiff argues a closer reading of this evidence indicates

14 that he does not actually do that much with regard to his mother and that she does not want him

15 to cook. (Dkt. # 10 at 11.) Plaintiff asserts that the only significant activities he performs is

16 cleaning and taking care of his mother's dog. (*Id*.)

17      Here, Plaintiff himself reported that he was a fulltime caregiver for his mother, and

18 although Plaintiff now proposes a new interpretation of Plaintiff's reported activities, the ALJ's

19 interpretation was rational. However, even if Plaintiff's activities were limited to just cleaning

20 and caring for his mother's dog, the ALJ could reasonably find those activities are inconsistent

21 with Dr. Kenderdine's opined limitations. Regardless, even if this was an insufficient reason to

22 discount the opinion, any error is harmless due to the other reasons provided by the ALJ.

23 *Carmickle.*, 533 F.3d at 1162-63.

Lastly, it was also a specific and legitimate reason to discount Dr. Kenderine's opinion due to the inconsistencies with the largely unremarkable mental status evidence in the record, just as the ALJ did with Dr. Widlan's opinion. The ALJ cited numerous records indicating Plaintiff had mostly normal mental status examinations, such as being largely alert, oriented, with normal mood and affect, and being cooperative. The ALJ could reasonably find the severity of Dr. Kenderine's opinion was inconsistent with the other mental status examinations. Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting the medical opinion evidence.

**B.**     **The ALJ Did Not Err in Assessing the Lay Witness Testimony**

Plaintiff's mother filled out a Function Report on Plaintiff's behalf. AR at 233-40. An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Plaintiff's mother reported Plaintiff has back problems, depression, does not like being around a lot of people, and can be hard to get along with when he is not on his medications. AR at 233. She reported Plaintiff was homeless but took care of her dog when he was around. *Id.* at 234. She further reported Plaintiff could prepare his own meals but did not know how long it takes him to do so. *Id.* at 235. She reported Plaintiff walks, uses public transportation, and goes to church but does not drive. *Id.* at 236-37.

The ALJ considered the lay witness opinion and accorded it partial weight because it was only partially consistent with the evidence. AR at 56. The ALJ discounted the statements due to the inherit subjectivity of the opinion, the lack of medically acceptable standards, and the partial inconsistency with the objective medical evidence, including opinion evidence from acceptable medical sources that indicate Plaintiff is more functional than his mother opined. *Id.*

Testimony from "other non-medical sources," such as friends and family members may not be disregarded simply because of their relationship to the claimant or because of any

1    potential financial interest in the claimant's disability benefits. *See Smolen v. Chater*, 80 F.3d

2    1273, 1289 (9th Cir. 1996) (holding that the ALJ erred by rejecting the lay witness testimony

3    based upon the witness' close relationship with the claimant). Therefore, the fact that Plaintiff's

4    mother has a personal relationship with him and therefore her opinion might be inherently

5    subjective was not a germane reason for discounting her statements.

6         Similarly, the lack of training in making exacting observations was not a germane reason

7    for discounting her statements. In providing her statement, Plaintiff's mother was not presenting

8    expert opinion or medical findings as to the extent of Plaintiff's disability or ability to work.

9    Rather, Plaintiff's mother reported her own respective observations of Plaintiff's limitations.

10        However, partial inconsistency with the objective medical evidence was a germane

11   reason to discount Plaintiff's mother's statements. Lay witness testimony may not be rejected on

12   the grounds that it lacks support from medical evidence, but it may be rejected if contradicted by

13   medical or other evidence. *Diedrich*, 874 F.3d at 640; *Bayliss*, 427 F.3d at 1218. As discussed

14   above, the ALJ cited numerous medical records showing Plaintiff's limitations are not as severe

15   as alleged. Accordingly, the ALJ provided a germane reason to discount Plaintiff's mother's

16   statements. !

17        Further, even if inconsistency with the objective medical evidence was not a germane

18   reason for discounting the lay witness testimony, any error is harmless because the ALJ's

19   reasons for discounting Plaintiff's testimony apply to his mother's similar statements. *See*

20   *Molina*, 674 F.3d at 1117 ("Where lay witness testimony does not describe any limitations not

21   already described by the claimant, and the ALJ's well-supported reasons for rejecting the

22   claimant's testimony apply equally well to the lay witness testimony, … the ALJ's failure to

23   discuss the lay witness testimony [is not] prejudicial per se."); *see also Valentine v. Comm'r of*

ORDER - 11

*Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (if an ALJ gave clear and convincing reasons for rejecting the claimant's testimony, those reasons are germane to similar testimony by a lay witness). Here, Plaintiff's mother described the same limitations as alleged by Plaintiff and the ALJ gave clear and convincing reasons for discounting his testimony. Accordingly, any error in discounting the lay witness statements would be harmless. *Carmickle.*, 533 F.3d at 1162-63

### C.    The ALJ Did Not Err in Finding Plaintiff has Past Relevant Work as a Cleaner/Housekeeper

Plaintiff bears the burden at step four of demonstrating that he can no longer perform his past relevant work. 20 C.F.R. § 416.920(e)-(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). Past relevant work is work generally: (1) performed within the past fifteen years, (2) constituting substantial gainful activity ("SGA"), and (3) lasting long enough for the individual to have learned how to perform the work. *See* 20 C.F.R. § 416.965. Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full-or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. § 416.972. Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. § 416.974(a). However, if average monthly earnings are less than the amount described in the regulations, it is presumed that a claimant has not engaged in substantial gainful activity. 20 C.F.R. § 416.974(b)(3).

At the hearing, Plaintiff testified that he most recently worked for approximately one month in a custodial position that involved mopping, sweeping, and cleaning windows through a temporary employment agency. AR at 79. The VE found this position to be that of a cleaner/housekeeper, DOT code 323.687-014, and found that someone with Plaintiff's limitations could perform that occupation. *Id.* at 97-99. Based on the VE's testimony, the ALJ found Plaintiff was capable of performing past relevant work as a cleaner/housekeeper. *Id.* at 56.

1    Plaintiff contends the ALJ improperly found Plaintiff could do past relevant work. (Dkt.

2    # 10 at 4.) He argues that he did not identify the cleaner/housekeeper position as one of his past

3    jobs, rather he identified his past work as warehouse worker, dishwasher, and driver's helper on

4    his work history report. (*Id.*) However, at the hearing, Plaintiff testified that he had worked in a

5    custodial type job mopping, sweeping, and cleaning windows. Further, Plaintiff has not

6    identified how his former employment in custodial work is distinct from the cleaner/housekeeper

7    position. The Court finds the ALJ could rely on the VE's expertise and testimony to determine

8    that Plaintiff's past work classifies as a cleaner/housekeeper position.

9    Plaintiff also asserts his past work does not meet the SGA element.[5] (*Id.* at 4-5.) Although

10   there is no evidence in the record regarding Plaintiff's most recent custodial work, Plaintiff notes

11   he earned only $3,110.48 in 2013 and $3,747.18 in 2017, whereas the SGA level for 2013 was

12   $12,480 and $14,040 for 2017. (*Id.* at 5 (citing Program Operations Manual Systems ("POMS")

13   10501.015).) The Commissioner argues that although earnings are presumptive, they are not

14   conclusive. (Dkt. # 13 at 8-9.) The Commissioner generally asserts the ALJ could find the SGA

15   element satisfied because Plaintiff testified that he worked for a month. (*Id.* at 9.)

16   Here, the Court finds the ALJ erred in finding Plaintiff's past custodial work rose to the

17   level of SGA. In the ALJ's decision, the ALJ concluded that Plaintiff's "warehouse worker,

18   dishwasher/kitchen helper, and cleaner/housekeeper jobs were performed at the substantial

19   gainful activity level for a sufficient duration to achieve average performance." AR at 56.

20   However, the ALJ did not specifically address Plaintiff's earnings from his cleaner/housekeeper

---

22   [5] Plaintiff also appears to imply that because his past work was only for a short duration, it is not past
     *relevant* work, although he specifically notes that the only issue raised is whether the SGA element has
23   been satisfied and he does not argue about the length of his employment. (Dkt. # 10 at 5.) As noted by the
     Commissioner, the cleaner/housekeep has a SVP of 2 and the time required to learn a job with SVP 2 is
     up to and including 1 month. DOT 323.687-014. The Court finds the length of Plaintiff's employment
     satisfies the duration element based on Plaintiff's testimony that he worked for approximately one month.

1    position and did not question Plaintiff about his earnings at the hearing. Based on Plaintiff's past

2    earnings that fall far below the SGA level, and that his custodial work was through a temporary

3    agency and only lasted one month, it is unlikely Plaintiff attained SGA earnings.

4         However, even though the ALJ erred in finding Plaintiff could perform past relevant

5    work at step four, the ALJ made an alternative finding at step five that Plaintiff was not disabled.

6    Accordingly, any error is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1042-43 (9th Cir.

7    2008) ("Although the ALJ's step four determination constitutes error, it is harmless in light of

8    the ALJ's alternative finding at step five.").

9         **D.      The Did Not Err at Step 5**

10        At step five, the ALJ found there were other jobs existing in the national economy that

11   Plaintiff was able to perform. AR at 57. The ALJ relied on the hearing VE's testimony regarding

12   available job numbers for an individual with Plaintiff's age, education, work experience, and

13   RFC. *Id.* The VE testified that the following occupations could be performed in the national

14   economy: assembler, electrical accessory, DOT code 729.687-010 (50,000); small products

15   assembler, DOT code 706.684-022 (50,000); production assembler, DOT code 706.687-010

16   (30,000). *Id.* at 96-99. All three jobs have a reasoning level of 2. *Id.* Plaintiff argues the job

17   numbers are unsubstantiated for several reasons, each is discussed below.

18             *1.      Subpoena Duces Tecum*

19        Plaintiff first takes issue with the denial of his request that the ALJ issue a subpoena

20   requiring the VE to bring the information that he would rely upon for his job numbers to the

21   hearing. AR at 41-42, 309-11. Plaintiff argues that without that information, he was unable to

22   meaningfully cross examine the VE. (Dkt. # 10 at 6.)

23

ORDER - 14

In federal court, "an expert witness must produce all data she has considered in reaching her conclusions," but "no similar requirement applies in SSA hearings." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing Fed. R. Civ. P. 26(a)(2)(B)). Further, a VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required." *Bayliss*, 427 F.3d at 1281; *Ford*, 950 F.3d at 1159 (where the expert is qualified and presents cogent testimony that does not conflict with other evidence in the record, "the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold" even when the expert declines to provide the underlying data) (citing *Biestek,* 139 S. Ct. at 1157). Because there is no requirement for an ALJ to grant a claimant's request for a subpoena, and Plaintiff has not shown that it was reasonably necessary or that the ALJ abused her discretion in denying Plaintiff's request, the Court finds the ALJ did not err. 20 C.F.R. § 416.1450(c).

### 2.    *VE Moisan*

Plaintiff argues the hearing VE testified that the jobs of assembler, electrical accessory and small products assembler had a combination of 50,000 jobs nationally but was unable to provide job numbers for each job individually. (Dkt. # 10 at 6.) Plaintiff asserts that as a result, he hired an independent VE, Mr. Moisan, after the ALJ issued her decision. (*Id.*); AR at 27-29. Mr. Moisan found that for the position of assembler, electrical accessory, there were only 6,950 jobs nationally. AR at 31. He also found there were only 747 jobs for the position of assembler and 681 jobs for the position of production assembler. *Id.* at 33, 37. Plaintiff asserts Mr. Moisan's job numbers are more accurate than the hearing VE's job numbers because he provided documentation regarding his testimony.

1    Pursuant to *Brewes v. Comm'r of SSA*, 682 F.3d 1157 (9th Cir. 2012), the Court

2 considered the VE's declaration submitted by Plaintiff after the hearing in considering whether

3 or not the Commissioner's decision was supported by substantial evidence. Although Mr.

4 Moisan provided a different opinion regarding job numbers, his declaration merely raises a

5 question of fact regarding the job numbers. As noted above, the hearing VE was not required to

6 bring documentation underlying his opinion. The hearing VE is qualified and presented cogent

7 testimony and therefore his testimony constitutes substantial evidence. Review of an ALJ's fact-

8 finding for substantial evidence is deferential and the inquiry defers to the ALJ. *Ford,* 950 F.3d

9 at 1159 (citing *Biestek*, 139 S. Ct. at 1157).

10    Plaintiff also asserts the jobs identified by the hearing VE are inconsistent with the RFC.

11 Plaintiff cites to Mr. Moisan's opinion that the jobs require the ability to do detailed work, which

12 he found to be inconsistent with the RFC's restriction to simple routine tasks and the ability to

13 adapt to only simple workplace changes. (Dkt. # 10 at 8.) Plaintiff further argues that the jobs

14 identified at the hearing required a reasoning level of 2, which the DOT indicates involve the

15 ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral

16 instructions. Deal with problems involving a few concrete variables in or from standardized

17 situations." (*Id.* at 7.) Plaintiff asserts doing detailed work is not simple and routine. (*Id.* at 8.)

18    The Commissioner does not dispute the DOT's definition of reasoning level 2. (Dkt. # 13

19 at 11.) Rather, the Commissioner cites to *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996,

20 1004, fn. 6 (9th Cir. 2015), that recognized unpublished Ninth Circuit decisions and decisions

21 from other circuits have concluded that a RFC limitation to simple or repetitive tasks is

22 consistent with level 2 reasoning, such as *Abrew v. Astrue,* 303 Fed.Appx. 567, 569 (9th Cir.

23 2008) (unpublished) (no conflict at step five in finding a claimant could complete only simple

1    tasks and the VE's testimony that claimant could perform jobs at reasoning level 2). (Dkt. # 13.)

2    The Commissioner also notes several district courts have reached the same conclusion. (*Id.*

3    (citing *Coleman v. Astrue*, 10-CV-5641, *available at* 2011 WL 781930 (C.D.Cal. Feb. 28, 2011)

4    ("the weight of prevailing authority precludes a finding of any inconsistency between a

5    reasoning level of two and a mere limitation to simple, repetitive tasks, or unskilled work");

6    *Meissl v. Barnhart* , 404 F.Supp.2d 981, 983-85 (C.D. Cal. 2005) (finding limitation to simple

7    and repetitive tasks to be closer to level 2 reasoning)).)

8           Here, the Court is persuaded that a RFC limitation to simple routine tasks is not

9    inconsistent with the DOT's definition of reasoning level 2 that includes the ability to understand

10   and carry out detailed work. The DOT specifically defines reasoning level 2 jobs as requiring

11   employees to carry out detailed *but uninvolved* instructions. Further, the RFC determination was

12   supported by substantial evidence and the VE testified that his testimony was consistent with the

13   DOT. AR at 99. The ALJ could therefore properly rely on the VE's testimony.

14          Plaintiff also argues that the RFC limitation to interacting only occasionally with

15   supervisors is inconsistent with the identified jobs. (Dkt. # 10 at 8.) Plaintiff asserts that

16   Appendix C: Components of the Definition Trailer of the Dictionary of Occupational Titles

17   defines occasionally as an activity or condition that exists up to one third of the time. (*Id.*)

18   Plaintiff argues successful employment would be impossible because two thirds of the time that a

19   supervisor tried to interact with Plaintiff, he or she would be ignored or rejected in some manner.

20   (*Id.*) The Commissioner argues that "occasionally" means "occurring from very little to up to

21   one-third of the time," and therefore the ALJ could reasonably find Plaintiff could tolerate

22   interacting with a supervisor for up to one third of a workday, not one third of all attempted

23   interactions. (Dkt. # 13 at 12 (citing SSR 83-10, *available at* 1983 WL31251, *5).)

1    Although Plaintiff asserts that a limitation to only occasional interaction with a supervisor

2    would preclude employment, he cites no authority in support of his argument. Rather, he

3    generally argues that limiting a supervisor's interaction to one third of the day would be an

4    "intolerable" situation. (Dkt. # 14 at 4.) However, the VE testified that Plaintiff could perform

5    the identified jobs, with the limitation to only occasional interaction with supervisors, and the

6    VE's testimony is substantial evidence that the ALJ could reasonably rely on. Accordingly, the

7    ALJ did not err in her step five determination.

8                                       **V.    CONCLUSION**

9            For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this

10   case is **DISMISSED** with prejudice.

11           Dated this 28th day of August, 2020.

13

14   _____
     MICHELLE L. PETERSON
15   United States Magistrate Judge